# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILENE DENISE BOLDING, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-16-29-SPS |

## OPINION AND ORDER

The claimant Wilene Denise Bolding requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born December 14, 1966, and was forty-six years old at the time of the administrative hearing (Tr. 45, 132). She completed twelfth grade, and has worked as a beautician and companion (Tr. 63, 179). The claimant alleges inability to work since June 1, 2005, due to bipolar disorder, depression, anxiety, high blood pressure, and arthritis (Tr. 178).

**Procedural History**

On April 26, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The applications were denied. ALJ J. Frederick Gatzke conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 20, 2014 (Tr. 24-36). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could not climb ropes, ladders, or scaffolds. Additionally, he determined that she retained the ability to

perform detailed, non-complex tasks, but should have only incidental contact with the public (Tr. 29). The ALJ then concluded that the claimant was not disabled because she had the RFC to perform her past work as a companion. Alternatively, he found that the claimant was not disabled because she could perform the jobs of garment bagger and price marker (Tr. 34-35).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly weigh the findings of consultative examiner, Dr. Shalom Palacio-Holmon, and (ii) by failing to properly evaluate her subjective symptoms. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The ALJ determined that the claimant had the severe impairments of fibromyalgia, hypertension, obesity, bipolar disorder, generalized anxiety disorder, and major depressive disorder (Tr. 26). The relevant medical evidence demonstrates that the claimant received regular medication management (largely only pharmacological management) at Mental Health Services Durant (Tr. 281-343). Treatment notes reflect the claimant sometimes had difficulty sleeping, but that she also took a trip to California in 2011 to stay with a friend for five days (Tr. 287). In April 2012, the claimant reported continued stressors and the notes indicated that the claimant's mood was fair and she was "really unchanged" (Tr. 281). She was assessed with bipolar I disorder, most recent episode mixed-severe, as well as generalized anxiety disorder (Tr. 283).

The claimant also received mental health treatment at Mental Health Services of Southern Oklahoma in Ardmore, Oklahoma, and treatment records reflect that in July 2012, the claimant's symptoms were moderate to severe (Tr. 401). She reported continued stress and fleeting thoughts of suicide, but no plan (Tr. 407). She was considered stable on her medications (Tr. 407).

On May 3, 2012, Dr. Palacio-Holmon, Psy.D., conducted a mental status/diagnostic examination of the claimant (Tr. 347). Upon exam, he noted that her communication skills were fair and that she appeared restless during the exam, but that her grooming was fair, her hygiene was good, and she had normal thought processes (Tr. 348). He stated that she appeared to be depressed, but that she was alert and oriented, and appeared to be of average intelligence (Tr. 349). He found that her concentration was mildly impaired, but that her insight was fair and her impulse control was poor (Tr. 349). He assessed her with clinical depression, bipolar II (Tr. 349). In his "Prognosis and Recommendations," Dr. Palacio-Holmon stated that the claimant's appearance and behavior were consistent with her reported symptoms, but that her prognosis was poor, as was her overall adjustment to stress, including likelihood of decompensation with continued stress (Tr. 350). He recommended that she continue counseling, but stated that she appeared to have psychological, cognitive, or emotional deficits that would significantly interfere with her ability to perform occupationally (Tr. 350). Continuing, he stated that she did not have the ability to understand, remember, and carry out both simple and complex instructions within a work setting, nor did she have the ability to adapt, persist, and keep pace with a work setting, or have the social ability to interact

with the public, co-workers, and supervisors (Tr. 350). He believed she would be a good candidate for vocational rehabilitation (Tr. 350).

On June 23, 2012, Dr. William Cooper, D.O., conducted a physical examination of the claimant. He noted, *inter alia*, that the claimant had pain with range of motion testing of the cervical and lumbar spine, thoracic spine, and both shoulders, and that her gait was slower than normal but safe and stable (Tr. 363, 368). He further noted that she had 18/18 positive tender points for fibromyalgia, and that she had tense musculature in the upper back, lower back, and neck (Tr. 369). He assessed her with depression, anxiety, hypertension, and chronic pain secondary to fibromyalgia (Tr. 364).

A state reviewing physician found that, with regard to mental impairments, the claimant was moderately limited in the typical three areas of: ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 384-385). She concluded that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 386). As to her physical impairments, a state reviewing physician found that the claimant could perform medium work with no additional limitations (Tr. 390-396).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. In typical boilerplate language, he found the claimant not credible. He noted that she repeatedly complained of joint pain and fatigue, but found that records from March 2009 and April 2010 and 2011 were "essentially normal," when she presented to a clinic for treatment of sinusitis and cough, and a

medication refill (Tr. 31, 269-278). The ALJ recited Dr. Cooper's findings, but provided no analysis of his opinion (Tr. 31). He gave significant weight to the opinions of the state reviewing physicians who found the claimant could perform medium work, but gave the claimant "the benefit of the doubt" and reduced her RFC to light work (Tr. 33). As to her mental impairments, the ALJ gave significant weight to the state reviewing physicians because their opinions "reflect a thorough review of the record and are supportable" (Tr. 33). He then assigned little weight to Dr. Palacio-Holmon's opinion, finding it not consistent with his own evaluation because Dr. Palacio-Holmon found the claimant was of average intelligence, her concentration was only mildly impaired, and he relied "heavily" on the claimant's subjective reports (Tr. 33). He thus found the claimant could perform light work with the above-mentioned restrictions (Tr. 34).

The claimant asserts that the ALJ erred in his analysis with regard to Dr. Palacio-Holmon's consultative exam, and the Court agrees and reverses on this basis. As part of this discussion, however, the Court points out the ALJ's additional error with regard to his lack of analysis of Dr. Cooper's opinion (which also lends support to the argument for reversal), but notes that the basis for reversal here lies in the ALJ's error with regard to Dr. Palacio-Holmon opinion. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir.

1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Here, the ALJ provided a summary of Dr. Palacio-Holmon's consultative examination, but failed to conduct the proper analysis. First, the ALJ's opinion failed to take into account that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005). *See also Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("[A] psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.' Dr. Houston's observations of Ms. Wise do constitute specific medical findings."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), *citing* 20 C.F.R. Subpt. P, app. 1 § 12.00(B). Additionally, the claimant's average intelligence and "only mildly impaired" concentration are not reasons to discount the limitations found by Dr. Palacio-Holmon, because he specifically noted concerns about her ability to perform occupationally with regard to adapting, persisting, keeping pace, and interacting with others. *See Haga v. Astrue*, 482 F.3d 1205, 1208

(10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). This error becomes of additional concern when combined with the ALJ's error in failing to assess Dr. Cooper's opinion at all, which also raises occupational concerns in light of her 18/18 positive fibromyalgia trigger points. Instead, the ALJ chose to rely on the non-examining opinion from the state reviewing physician.

Furthermore, the Court also finds that the ALJ erred in formulating the claimant's RFC. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). *See also Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7. "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ has failed to connect the claimant's RFC to the medical evidence in the record, including, *inter alia*, when he failed to specify how the limitation to light work properly accounted for her fibromyalgia, and how the nonexertional limitations specifically account for her bipolar disorder, generalized anxiety disorder, and major depressive disorder.

Finally, the claimant contends that the ALJ failed to properly evaluate the claimant's subjective symptoms under the proper standard. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, that eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007).

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**